**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| B.K., THE NEW JERSEY OFFICE OF THE PUBLIC DEFENDER, and EMILY DOE, <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR S. GREWAL, ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, <br><br> Defendant. | Civ. Action No. 19-05587 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

In this action, plaintiffs B.K. and Emily Doe ("Plaintiffs") have filed separate civil complaints,[1] in which they challenge the constitutionality of the registration scheme in Megan's Law, N.J.S.A. 2C:7-1 *et seq*., as applied to juvenile sex offenders.  Plaintiffs are both currently young adults residing in New Jersey.  They were each adjudicated delinquent for committing sex offenses as juveniles and, thus, are subject to the reporting and registration obligations of Megan's Law.  The thrust of Plaintiffs' claims is that Megan's Law should apply differently to registrants who committed sex offenses when they were juveniles because, for a host of reasons (including incomplete brain development), they allegedly are less likely to recidivate upon reaching adulthood.  Plaintiffs submit that juvenile sex offenders must be afforded an opportunity to present evidence to show that they are unlikely to re-offend and, thus, are entitled to be relieved of their

---

[1]       B.K. filed his original complaint in this action on February 13, 2019 (*see* ECF No. 1 (hereinafter, "B.K. Compl.")), and Emily Doe subsequently intervened with the filing of her complaint on December 10, 2019 (*see* ECF Nos. 32 (hereinafter, "Doe Compl.")).

registration obligations under Megan's Law. They base their claims on multiple constitutional theories, including violations of the due process and equal protection guarantees afforded under the United States and New Jersey Constitutions.

Presently before the Court are two separate motions brought by defendant Gurbir S. Grewal, Attorney General for the State of New Jersey ("Defendant"), to dismiss both of Plaintiffs' complaints, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In both motions, Defendant contends that each of Plaintiff's constitutional claims fails as a matter of law. Plaintiffs oppose the motions, arguing that they have sufficiently alleged that Megan's Law violates their constitutional rights and those of other juvenile sex offenders. Having considered the parties' submissions, the Court finds that Plaintiffs have failed to allege a violation of the United States Constitution, and, absent any federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Accordingly, for the reasons set forth below, Defendant's motions are **GRANTED**.

## I.     BACKGROUND

### A.     Megan's Law

In 1994, the New Jersey Legislature enacted Megan's Law, which imposes reporting and registration obligations upon persons who have been convicted or adjudicated delinquent for commission of certain prescribed sex offenses. *See* N.J.S.A. 2C:7-1 *et seq*. In enacting Megan's Law, the New Jersey Legislature declared that "[t]he danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety." N.J.S.A. 2C:7-1(a). The Legislature further declared that "[a] system of registration of sex offenders and offenders who commit other predatory acts against children will provide law

2

enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1(b)

The registration requirements under Megan's Law that Plaintiffs challenge in this case are set forth in N.J.S.A. 2C:7-2. Upon adjudication of a prescribed sex offense,[2] a sex offender must register with the police department in the municipality where he or she lives by providing fingerprints and information about his or her residency, employment, and school enrollment. *See* N.J.S.A. 2C:7-2(c). Registrants are categorized into three tiers based on an assessment of their risk of re-offense, with registrants classified as "Tier One" deemed to have the lowest risk to re-offend and those classified as "Tier Three" deemed to have the highest risk. *See* N.J.S.A. 2C:7-8(c). For Tier One registrants, like B.K. and Emily Doe, notification is limited to "law enforcement agencies likely to encounter the person registered." N.J.S.A. 2C:7-8(c)(1). Following registration, a Tier One registrant must annually verify his or her address, notify the municipal law enforcement agency upon a change of address, employment, or school enrollment status, and re-register with the appropriate law enforcement agency within 10 days before moving to a new municipality. *See* N.J.S.A. 2C:7-2(d), (e). A Tier One registrant who fails to update his or her registration may be found guilty of committing a crime of the third degree. *See* N.J.S.A. 2C:7-2(d).

Under Subsection (f) of N.J.S.A. 2C:7-2, a registrant is permitted to apply to the New Jersey Superior Court to terminate his or her registration obligations "upon proof that the person has not committed an offense within 15 years following conviction . . . and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f) (hereinafter, "Subsection (f)"). Although the 15-year time bar in Subsection (f) refers only to an "offense . . . following conviction," the statute has been enforced by Defendant, and assumed by the courts, as requiring that juvenile sex

---

[2]     The specific offenses for which registration is required are identified in N.J.S.A. 2C:7-2(b).

offenders—who are "adjudicated delinquent" for predicate sex offenses—also register for at least

fifteen years.  *See State in Interest of C.K.*, 233 N.J. 44, 75 (2018) (stating that "Subsection (f). . .

allows for a *juvenile sex offender* to be relieved of [the registration and notification] requirements

fifteen years after his *juvenile adjudication* or release from a correctional facility, provided he has

been offense-free and 'is not likely to pose a threat to the safety of others'") (emphasis added).

During that period of time, a juvenile sex offender is unable to present evidence to a court regarding

his or her risk (or lack thereof) of committing future sex offenses.  Thus, upon adjudication of

delinquency for a sex offense, juveniles are subjected to the registration requirements of Megan's

Law for a minimum of fifteen years, without any assessment of their risk to the public.

### B.        Plaintiffs' Background and Sex Offense History

#### (1)     B.K.

In his complaint, B.K. states that he is twenty-three years old and resides in Union County,

New Jersey.  (B.K. Compl. at ¶ 22.)  He committed sex offenses as a juvenile, between the ages of

fourteen and fifteen years old, and was adjudicated delinquent for those offenses on June 27, 2012,

at the age of sixteen.  (B.K. Compl. at ¶ 25.)  As a result of that adjudication, he was sentenced to

probation for two years, and was required to register under Megan's Law.  (B.K. Compl. at ¶ 26.)

Having been classified as a Tier One registrant under Megan's Law, B.K. is required to verify his

address with local law enforcement annually, and to re-register upon any change of address,

employment, or school enrollment status.  (B.K. Compl. at ¶ 28.)

Since his adjudication at the age of sixteen, B.K. maintains that he graduated from high

school and college, and now works as a financial analyst at a large international

telecommunications company in the tristate area.  (B.K. Compl. at ¶¶ 29, 32.)  B.K. asserts that he

will eventually be required to travel both within the United States and internationally for his

company, and alleges that his job may be jeopardized if he faces travel restrictions due to his status

as a Megan's Law registrant.  (B.K. Compl. at ¶¶ 32-33.)  B.K. submits that he has undergone two psychological evaluations in the years following his discharge from probation.  (B.K. Compl. at ¶¶ 36, 39, 43.)  B.K. claims that they showed "no signs of serious psychological problems" and that he now poses a very low risk to the community.  (B.K. Compl. at ¶¶ 43, 47.)

      **C.**     <u>**Emily Doe**</u>

In her complaint, Emily Doe states that she is twenty years old and resides in Mercer County, New Jersey.  (Doe Compl. at ¶ 15.)  Like B.K., Emily Doe also committed a prescribed sex offense when she was juvenile, at age fourteen, and was adjudicated delinquent for that sex offense on October 17, 2014.  (Doe Compl. at ¶¶ 15, 31.)  As a result of that adjudication, she was sentenced to probation with a residential placement, and was required to register under Megan's Law.  (Doe Compl. at ¶¶ 15, 31.)  Like B.K., Emily Doe is classified as a Tier One registrant and, therefore, subject to the annual verification requirement and the re-registration requirement upon any change of address, employment, or school enrollment status.  (Doe Compl. at ¶ 28.)

Since her adjudication at the age of fourteen, Emily Doe maintains that she has obtained a high school diploma and has taken several business courses through a technical school.  (Doe Compl. at ¶ 25.)  She states that she plans to transfer her credits to her local community college and earn a degree in the next few years.  (Doe Compl. at ¶ 25.)  At the time of the filing of her complaint, she states that she was pregnant with her first child, a girl due in January 2020.  (Doe Compl. ¶ 27.)  Emily Doe submits that she is a "rehabilitated young person."  (Doe Compl. at ¶ 29.)  She states that she was placed in a group home and afforded various therapeutic services that helped her address the underlying causes of her offense.  (Doe Compl. at ¶ 32.)  She asserts that "she has made remarkable progress in therapy and socially and now presents a negligible risk of sex offense recidivism."  (Doe Compl. at ¶ 45.)

### D.     <u>Plaintiffs' Claims and Procedural History</u>

On February 13, 2019, B.K. filed a civil complaint in this Court, seeking declaratory and injunctive relief against Defendant. (*See* ECF No. 1.) On December 10, 2019, the New Jersey Office of the Public Defender filed a civil complaint intervening in the case on behalf of Emily Doe. (ECF No. 32.) In their complaints, Plaintiffs allege that the State of New Jersey's enforcement of the registration requirements of Megan's Law against each of them constitutes an ongoing violation of both their and other juvenile sex offenders' federal and state constitutional rights.

Each of Plaintiffs' constitutional claims appears to fall within one of three categories. In the first category, Plaintiffs assert that the registration scheme of Megan's Law—and, in particular, the 15-year time bar of Subsection (f)—violates their substantive due process protections and those of other juvenile sex offenders, because the challenged provisions are neither narrowly tailored to satisfy a significant or compelling state interest, nor rationally related to a legitimate state interest. (*See* B.K. Compl. at ¶¶151-157 (First Count), ¶¶ 158-164 (Second Count), ¶¶170-173 (Fourth Count); Doe Compl. at ¶¶ 72-75 (Count One), ¶¶ 76-78 (Count Two).) In the second category, Plaintiffs assert that imposing the requirements of Megan's Law upon them and other juvenile sex offenders, absent allowing them to present evidence of their lack of dangerousness, constitutes an irrebuttable presumption of dangerousness prohibited by the procedural due process protections of the United States Constitution and New Jersey Constitution. (B.K. Compl. at ¶¶165-169 (Third Count), ¶¶ 174-178 (Fifth Count); Doe Compl. at ¶¶ 79-82 (Count Three).) In the third category, Plaintiffs asserts that the application of Megan's Law to them and other juvenile sex offenders violates the equal protection guarantees and procedural due process protections of the United States and New Jersey Constitutions, because the different treatment afforded under the law

between juvenile sex offenders and juvenile offenders without a sex offense history is arbitrary. (B.K. Compl. at ¶¶ 179-182 (Sixth Count); Doe Compl. at ¶¶ 83-84 (Count Four).)[3]

On March 13, 2020, Defendant filed separate motions to dismiss the complaints of Plaintiffs under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that each of Plaintiff's constitutional theories fails as a matter of law. (*See* ECF No. 42, 43.) On May 18, 2020, Plaintiffs filed their oppositions to Defendant's motions (*see* ECF No. 48, 50), and, on July 24, 2020, Defendant filed replies in further support of his motions (s*ee* ECF Nos. 62, 63.)

## II.    DISCUSSION

### A.    Substantive Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV, § 1. The prohibition contains both a procedural and substantive component. *See Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017); *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846 (1992). The substantive component "limits what [the] government may do regardless of the fairness of procedures that it employs," *Steele*, 855 F.3d at 501, (citation omitted), "in order to 'guarantee protect[ion] against government power arbitrarily and oppressively exercised.'" *Id.* (quoting *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 846

---

[3]     In addition to her constitutional claims, Emily Doe also asserts a pendant state-law claim based on the statutory language of Subsection (f). Specifically, in Count Five of her complaint, Emily Doe asserts that a plain reading of the statute precludes the application to juveniles of the provision requiring Megan's Law registrants to demonstrate that they have not committed an offense for 15 years before they may apply to terminate their obligations under the law. In support of her argument, Emily Doe points to the fact that Subsection (f) explicitly references "convictions" as opposed to "adjudication of delinquency" as a triggering event. (*See* Doe Compl. at ¶¶ 85-92.) Subsequent to the filing of Defendants' pending motions to dismiss, on May 18, 2020, Emily Doe cross-moved for partial summary judgment on Count Five, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* ECF No. 49.) Because I am dismissing all of Plaintiff's federal claims, and I decline to exercise supplemental jurisdiction over any remaining state-law claims, I do not reach Emily Doe's motion for partial summary judgment.

(1998)).   It "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *see also Reno v. Flores*, 507 U.S. 292, 301-302 (1993).  Thus, when a challenged statute infringes upon a "fundamental" right, the statute is subjected to heightened scrutiny, and ordinarily will not be upheld "unless the infringement is narrowly tailored to serve a compelling state interest." *Flores*, 507 U.S. at 302.  However, when no such fundamental right is implicated, a challenged statute "need only be rationally related to a legitimate State interest." *Holland v. Rosen*, 895 F.3d 272, 296 (3d Cir.), *cert. denied*, 139 S. Ct. 440, 202 L. Ed. 2d 319 (2018).

Here, Plaintiffs contend that heightened scrutiny should be applied to the registration scheme of Megan's Law, because Plaintiffs and other juvenile sex offenders possess liberty interests that are affected during the period of the 15-year time bar of Subsection (f).  In particular, Plaintiffs assert that the registration scheme under Megan's Law infringes upon their "fundamental right to travel," as it requires sex offenders to re-register each time they change a place of residence, work, or school.[4]  Plaintiffs alternatively contend that even if no fundamental right is implicated, the registration scheme under Megan's Law violates their substantive due process rights because there is no rational relationship to a legitimate state interest.  In response, Defendant

---

[4]      In her opposition papers, Emily Doe also asserts that another provision of Megan's Law implicates a fundamental right under the Free Exercise Clause of the First Amendment.  Specifically, she contends that that N.J.S.A. 2C:7-23(a) "burdens the free exercise of religion by prohibiting juvenile offenders from participating in religious organizations that serve youth."  (Doe Opp. Br. at 24.)  However, Emily Doe makes no mention of the Free Exercise Clause or the First Amendment in her complaint, and she does not plead any facts showing that Megan's Law has affected her ability to freely exercise her religion.  Rather, these allegations are raised for the first time only in her opposition papers.  The Court cannot consider allegations that first appear in a party's brief in deciding a motion to dismiss.  *See Marks v. Struble*, 347 F. Supp. 2d 136, 148 (D.N.J. 2004) (refusing to consider allegations made for the first time in response to a defendants' motion to dismiss in resolving Rule 12(b)(6) motion); *Commonwealth of Pa ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).  To the extent that Emily Doe wishes to raise a claim based on the Free Exercise Clause, she must first file a motion to amend her complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

acknowledges that the requirement to re-register upon moving or changing places of work or school creates some burden upon registered sex offender's ability to relocate their residence; however, Defendant argues that any added burden is merely "incidental" to an asserted right to travel and, therefore, does not constitute infringement upon that right.  Having considered the parties' arguments, the Court finds that the registration scheme of Megan's Law has only an incidental effect, if any, upon Plaintiff's right to travel and, therefore, does not trigger heightened scrutiny.

The Supreme Court has recognized a right to interstate travel in several decisions, beginning with *United States v. Guest*, 383 U.S. 745, 757-58 (1966), and *Shapiro v. Thompson*, 394 U.S. 618, 629-30 (1969).  The Supreme Court has summarized that the right to interstate travel embraces at least three different components: "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."  *Saenz v. Roe*, 526 U.S. 489, 500 (1999).  The Third Circuit has further recognized a constitutional right of "intrastate travel," stemming from substantive due process.  *Lutz v. City of York, Pa.*, 899 F.2d 255, 268 (3d Cir. 1990) ("We conclude that the right to move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.'")  Thus, under Supreme Court and Third Circuit precedent, "[a] state law implicates the right to travel" in three circumstances: (1) "when it actually deters such travel"; (2) "when impeding travel is its primary objective," or (3) when it uses "any classification which serves to penalize the exercise of that right."  *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S.

898, 903 (1986); *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 295 (3d Cir. 2019).

Here, Plaintiffs argue that Megan's Law violates their right to travel by penalizing certain "intrastate travel activities" of juvenile sex offenders that deter them from relocating within the state. They contend that the registration requirements of Megan's Law deter them both by virtue of the statute's direct restrictions and obligations (requiring in-person registration and address verification under a variety of circumstances involving intrastate travel) and by its indirect restrictions on interstate travel, due to myriad local, state, and federal laws that apply to sex offenders throughout the country. In his opposition brief, B.K. offers two hypothetical examples of how he believes these restrictions penalize or deter his right to travel. First, B.K. supposes that, "[i]f a [juvenile sex offender]'s family seeks to rent a home for the summer at the New Jersey shore and the juvenile, who could be as young as 10 years of age or younger, fails to register in the shore community, he would be subject to an additional juvenile adjudication as delinquent that would preclude him from ever being able to seek termination from Megan's Law." (B.K. Opp. Br. at 25.) Second, B.K. supposes that, "though accepted to a college of his choice, a [juvenile sex offender] may be deterred from traveling to the state in which the college is located and enrolling in the school because of state laws that would penalize, with criminal sanctions, his ability to: reside near or on campus; be in the physical proximity of any number of places (schools, libraries, parks, day care centers, theaters, arcades, etc.) the locations of which may not even be readily known to him; live with his own child(ren), if he has a son or daughter; or work in a field related to his educational pursuits, among other restrictions." (B.K. Opp. Br. at 26.)

I disagree with these arguments. The registration scheme in Megan's Law neither impedes, penalizes, nor deters travel. It imposes no obstacle to a sex offender's movement within or outside

the state.  There is "free ingress and regress to and from" New Jersey for sex offenders, and the statute thus does not "directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 501.  The requirement to re-register when moving or changing places of work or school may create an added burden on registered sex offenders' ability to change their residence within New Jersey, because they are required to take actions that they might otherwise not have taken. However, it does not prevent a sex offender from entering or leaving any part of New Jersey, and it does not erect any actual barrier to intrastate movement.  Rather, any effect on the "right to travel is incidental to th[e] [registration] obligation, and not constitutionally offended." *U.S. v. Shenandoah*, 595 F.3d 151, 162-163 (3d Cir. 2010) (finding that the burdens imposed on the right to travel by the re-registration requirements under a similar sex offender statute were "meaningless").  Furthermore, any indirect restrictions in other statutes that may be triggered by a person's designation as a sex offender has no bearing on whether the registration requirements in New Jersey's Megan's Law have an impact upon the right to travel.  Those other statutes have not been challenged in Plaintiff's complaint.[5]  Because the registration requirement in New Jersey's Megan's Law does not impose any obstacles upon a sex offender's movement within or outside New Jersey, and the statute has, at most, only an incidental effect on a registered sex offender's right to travel, strict scrutiny is not triggered.[6]

Because heightened scrutiny is not triggered, the registration scheme of Megan's Law and 15-year time bar in Subsection (f) "need only be rationally related to a legitimate State interest" in

---

[5]      To the extent that Plaintiffs believe there are statutes other than Megan's Law that are constitutionally infirm, Plaintiffs may challenge those other statutes in a separate action.

[6]      I note that Plaintiffs do not make any distinction between the right to travel of an adult vis-à-vis a juvenile.  Indeed, any such distinction in this case would appear to be irrelevant, as both B.K. and Emily Doe have advanced in age since they were each adjudicated delinquent for their respective sex offenses, and are now adults.

relation to juvenile sex offenders.  *Holland v. Rosen,* 895 F.3d 272, 296 (3d Cir. 2018).  Under the rational-basis standard, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute."  *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997)).  This standard of review is "not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Rather, courts "are compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  *Heller*, 509 U.S. at 320-21; s*ee also New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 209 (2008) (Stevens, J., concurring) (emphasizing "the distinction between constitutionality and wise policy," and stating that "[t]he Constitution does not prohibit legislatures from enacting stupid laws").

I find that the registration scheme of Megan's Law, as well as the 15-year time bar in Subsection (f), are rationally related to a legitimate state interest.  New Jersey jurisprudence has established that the legislative rationale for the registration scheme in Megan's Law is to further public safety in relation to sex offenders.  *See State in Interest of C.K.*, 233 N.J. 44, 59 (2018) (citing N.J.S.A. 2C:7-1(a)).  The legislation "permit[s] law enforcement officials to identify and alert the public" about sex offenders who may pose a danger to children.  *Id*. (citing N.J.S.A. 2C:7-1(a)).  Moreover, the Third Circuit has determined that protecting vulnerable individuals from sexual offenders and preventing future sex crimes is not only a legitimate interest, but a compelling one, *see United States v. Shenandoah*, 595 F.3d 151, 163 (3d Cir. 2010), and that requiring the registration of sex offenders is rationally related to that interest, *see Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267-68 (3d Cir. 1996).

12

With respect to the 15-year time bar, the New Jersey Legislature's judgment was that a period of fifteen years was appropriate to provide a sufficient assurance of good conduct such that a registrant could at that point apply to the court to terminate his or her registration obligations under Megan's Law. *See State in Interest of C.K.*, 233 N.J. 44, 64 (2018) (stating that "[t]he underlying assumption of [Subsection (f)] is that when a registrant, who has been offense-free for fifteen or more years, no longer poses a risk to the safety of the public, keeping him bound to the registration requirements no longer serves a remedial purpose"). Although the application of Megan's Law to juvenile sex offenders may yield imperfect results, the Legislature's conclusion that fifteen years is an appropriate period of time is rational.[7] Accordingly, I find that the challenged provisions of Megan's Law withstand rational basis review, and, therefore, Plaintiffs' substantive due process claims are dismissed.

## B. **Procedural Due Process Claims**

The procedural due process component of the Fourteenth Amendment requires that "[b]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *L.A. ex rel. Z.Kh. v. Hoffman*, 144

---

[7]     In their opposition papers, Plaintiffs argue that updated empirical research establishes that, in hindsight, Megan's Law is not actually rational when applied to juvenile sex offenders. Even if that may be the case, the proper venue for those suggestions is the State legislature, not the federal courts. Under rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach*, 508 U.S. at 315. Plaintiffs' reliance on a line of cases in which the Supreme Court applied a more searching review is misplaced. (*See* B.K. Opp. Br. at 17 (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985)); Doe Opp. Br. at 26 (citing *Cleburne*, 473 U.S. 432; *Romer v. Evans*, 517 U.S. 620 (1996))). In those cases, the Supreme Court did so only after finding that the challenged statutes were motivated by "irrational prejudice" or "animosity towards the class of persons affected" by the challenged statutes. *See Cleburne*, 473 U.S. at 450; *Romer*, 517 U.S. at 63. There is no suggestion that Megan's Law was enacted with such ulterior motives. Plaintiffs' reliance on *Gonzales v. Carhart*, 550 U.S. 124, 165 (2007), is also misplaced. (*See* B.K. Opp. Br. at 18.) That case involved the application of a particular form of scrutiny that is applied in the abortion rights context; it did not involve rational basis review.

F. Supp. 3d 649, 668 (D.N.J. 2015) (quoting *Bd. Of Regents of State Colleges v. Ro*th, 408 U.S. 564, 570 n.7 (1972)). In analyzing a procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the asserted interest falls within the protections of the Due Process Clause, the second step is to determine whether the plaintiff was afforded all of the process he was due. *See id.*

Here, Plaintiffs assert that Subsection (f) of Megan's Law deprives juvenile offenders of a meaningful right to be heard when he or she can "prove that he [or she] is not likely to pose a danger to the safety of others" (B.K. Compl. at ¶ 166) and demonstrate that "he or she poses a negligible risk of sex offense recidivism." (Doe Compl. at ¶ 81.) Plaintiffs also maintain that the imposition of Megan's Law on juveniles solely based on their sex offense adjudication, without considering their individual risk, violates due process. (Doe Compl. at ¶¶ 84.) In response, Defendant contends that the likelihood of recidivism posed by a sex offender is not relevant to the general enforcement of Megan's Law and, therefore, a procedural due process right to a weighing of likelihood of recidivism is not required. Having considered the parties' arguments, I find that Subsection (f) does not violate Plaintiffs' procedural due process rights.

Due process does not mandate the opportunity to prove a fact that is not relevant to the sexual offender statute. *See Conn. Dep't of Pub. Safety*, 538 U.S. at 8 (2003) (holding that there was no procedural due process right because "the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law"). Here, Plaintiffs are subject to the provisions of New Jersey's Megan's Law based solely on their status as convicted or adjudicated sex offenders, not based on their risk of re-offense or any presumption

of dangerousness.  *See* N.J.S.A. 2C:7-2(a), (b)(1)-(3).[8]  Therefore, the individualized likelihood of recidivism posed by either B.K. or Emily Doe, or the lack thereof, is not relevant to the enforcement of Megan's Law.  Furthermore, "[t]he right to procedural due process does not exist in isolation." *Clark v. Twp. Of Falls*, 890 F.2d 611, 620 (3d Cir. 1989).  Instead, substantive protected liberty interests that are entitled to procedural safeguards generally arise either from the Constitution itself or from a state-created statutory entitlement.  *Shoats*, 213 F.3d at 143 (citing *Bd. Of Regents v. Roth*, 408 U.S. 564, 575 (1972)).  Plaintiffs point to no statute or constitutional provision that creates a substantive liberty interest in a right to a weighing of the likelihood of recidivism.  Accordingly, I find that Plaintiffs' procedural due process claims fail, and those claims are dismissed.

### C.    Equal Protection Claims

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'"  *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)).  "The level of scrutiny applied to ensure that classifications comply with this guarantee

---

[8]     Additionally, Plaintiffs assert that Megan's Law violates procedural due process by creating an "irrebuttable presumption of dangerousness." (B.K. Compl. at ¶ 175; Doe Compl at ¶ 81.)  This argument closely resembles the procedural due process argument made in *Connecticut Department of Public Safety*, 538 U.S. 1, 6 (2003).  There, the sex offenders argued that they have a procedural due process right to demonstrate they are not "currently dangerous" because the sex offender registration requirement implied that they were dangerous.  *Id*.  Although the Second Circuit Court of Appeals agreed with that argument and held there was a due process violation, the Supreme Court reversed, holding that no liberty interest was implicated because the Connecticut statute turned "on an offender's conviction alone" and dangerousness "is of no consequence under" the law.  *Id*. at 6-7.  Similarly, here, New Jersey's Megan's Law does not turn on the dangerousness of the offender, merely the fact that he or she was convicted or adjudicated of having committed a prescribed sex offense.  *Accord Millard v. Camper*, --- F.3d ---, 2020 WL 4875290, at *8 (10th Cir. Aug. 20, 2020); *Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005).

differs depending on the nature of the classification." *Id.* "Classifications involving suspect or quasi–suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny." *Id.* (citing *Cleburne*, 473 U.S. at 439). "Other classifications, however, need only be rationally related to a legitimate government goal." *Id.* (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Megan's Law requires persons who have been adjudicated delinquent for committing a prescribed sex offense to register in the municipality where he or she lives, notify the municipal law enforcement agency if he or she moves or upon a change of employment or school enrollment status, and re-register if he or she moves to any new municipality. The challenged classification in this case—juveniles adjudicated delinquent for committing a sex offense—is not a suspect or quasi-suspect category. *See Cleburne*, 473 U.S. at 440 (listing classes receiving heightened scrutiny as race, alienage, national origin, and sex). Furthermore, for the reasons explained above, the challenged statute does not implicate a fundamental constitutional right for which the Supreme Court has granted heightened protection. This classification, therefore, is subject to "[t]he general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440 (citing cases).

The registration requirements of Megan's Law easily satisfy this requirement. The Third Circuit has determined that "[p]rotecting vulnerable individuals from sexual offenses is certainly a legitimate state interest." *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996). Furthermore, requiring registration of juveniles who have been adjudicated as having committed a sex offense, as opposed to other juveniles adjudicants without a sex offense history, is rational. While Plaintiffs contend that juvenile sex offenders should be evaluated based on the individual risks that they may pose, "the equal protection clause does not prevent the legisl[a]ture

16

from recognizing 'degrees of evil.'" *Skinner v. Oklahoma*, 316 U.S. 535, 540 (1942)).  The New Jersey Legislature could have rationally concluded that juveniles adjudicated for committing a sex offense pose a different degree of risk than juveniles adjudicated delinquent for non-sex offenses. Accordingly, I find that Plaintiffs' equal protection claims under the U.S. Constitution fail, and those claims are dismissed.

### D.     State-Law Claims

Because the Court has found that Plaintiffs have failed to state any of their claims under the federal constitution, the only potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Under Section (c) of 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The Third Circuit has stated that "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995); *cf. Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").  In this case, having dismissed all of Plaintiffs' federal claims, I find that there are no considerations to justify this Court's exercise of supplemental jurisdiction over their remaining state law claims and, therefore, I decline to exercise jurisdiction over those claims.[9]

---

[9]      I also note that principles of federalism and comity favor allowing the state courts to decide Plaintiffs' state law claims.  The New Jersey courts are better positioned to decide whether their own Constitution has been violated by Defendant's policy of enforcing the 15-year time bar in Subsection (f)

*(Footnote continued on next page.)*

III.   __CONCLUSION__

In summary, I find that each of Plaintiffs' claims under the federal constitution fail as a matter of law.  Their substantive due process claims fail because their asserted right to travel does not trigger heightened scrutiny, and the challenged provisions of Megan's Law withstand rational-basis review.  Plaintiffs' procedural due process claims fail because the individualized likelihood of recidivism posed by juvenile sexual offenders is not relevant to the enforcement of Megan's Law, and Plaintiffs point to no other source for a substantive liberty interest in a right to a weighing of the likelihood of recidivism.  Their equal protection clause claims fail because juvenile sex offenders are not a suspect class, and there is a rational basis for distinguishing between juvenile sex offenders and juveniles adjudicated delinquent for non-sex offenses.  Having found that Plaintiffs have failed to state any federal claims, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Accordingly, Defendants' motions to dismiss are **GRANTED**, and Plaintiffs' claims are dismissed, without prejudice to Plaintiffs pursuing their state-law claims in state court.  An appropriate Order accompanies this Opinion.

---

against juveniles.  Furthermore, the issue presented by Plaintiff's statutory construction claim—*i.e.*, whether the 15-year time bar applies to juvenile offenders in the first instance—appears to be unsettled or uncertain.  On the one hand, the New Jersey Supreme Court has suggested, albeit in dicta, that the 15-year time bar applies to juveniles. *See State in the Interest of C.K.*, 233 N.J. 44, 48 (2018) (stating that "[S]ubsection (f) allows a registrant to seek relief from [its] requirements fifteen years after *his juvenile adjudication* . . . ) (emphasis added).  On the other hand, such an interpretation may conflict with the underpinnings of the state juvenile justice code—which contemplates rehabilitation for juvenile delinquents by the age of majority, in most cases. *See In re Registrant J.G.*, 169 N.J. 304, 335 (2001) (discussing the "the Juvenile Code's emphasis on supervision, care and rehabilitation" by providing, for instance, that "all orders of disposition other than for incarceration in delinquency cases shall terminate at age eighteen, or three years from the date of the order, whichever is later").  In this case, by declining supplemental jurisdiction in favor of resolution by the state courts, this Court may avoid a needless decision on such an important state policy issue.